**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**
**CASE NO. 7:16-CV-00056-KKC**

PAMELA BLEVINS, *et al.*,                                                    PLAINTIFFS

v.

JOHN KIRK, *et al.*                                                          DEFENDANTS

---

**MOTION TO STRIKE THE REPORT AND TESTIMONY OF**
**PLAINTIFFS' EXPERT WARREN JAMES WOODFORD**

---

The Defendants, John Kirk, individually and in his capacity as Martin County Sheriff; Paul D. Witten, individually and in his capacity as Martin County Deputy Sheriff; the Martin County Sheriff's Office; and, Martin County, Kentucky, by and through counsel, and pursuant to Rules 402 and 702 of the Federal Rules of Evidence, respectfully move this Court to strike the report and testimony of Plaintiffs' expert, Warren James Woodford: because (1) he is not qualified as an expert on the issues relevant to this case; (2) his testimony is unreliable; (3) his opinions are conclusions of law; (4) his opinions are unnecessary and invade the role of the jury; and (5) his testimony includes matters which are not relevant to this litigation. A Memorandum in Support and proposed Order are attached.

Respectfully submitted,

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq. (#43548)
Claire E. Parsons, Esq. (#92934)
ADAMS, STEPNER,
WOLTERMANN & DUSING, PLLC
40 West Pike Street
Covington, KY  41011
859.394.6200
859.392.7263 – Fax
jmando@aswdlaw.com
cparsons@aswdlaw.com

*Attorneys for Defendants, John Kirk, individually and in his capacity as Martin County Sheriff; Paul D. Witten, individually and in his capacity as Martin County Deputy Sheriff; the Martin County Sheriff's Office; and, Martin County, Kentucky*

## CERTIFICATE OF SERVICE

This is to certify that on the **7th** day of July, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:  Michael J. Curtis, Esq.

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq.

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**
**CASE NO. 7:16-CV-00056-KKC**

**PAMELA BLEVINS, *et al.*,**                                                                 **PLAINTIFFS**

**v.**

**JOHN KIRK, *et al.*,**                                                                           **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE REPORT**
**AND TESTIMONY OF PLAINTIFFS' EXPERT WARREN JAMES WOODFORD**

---

The Defendants, John Kirk, individually and in his capacity as Martin County Sheriff; Paul D. Witten, individually and in his capacity as Martin County Deputy Sheriff; the Martin County Sheriff's Office; and, Martin County, Kentucky, by and through counsel, and for the Memorandum in Support of their Motion to Strike the Report and Testimony of Plaintiffs' Expert, Warren James Woodford, state as follows:

I.      **WOODFORD'S BACKGROUND AND REPORT**

It is not clear exactly what type of expert Plaintiffs believe Warren James Woodford is. Plaintiffs did not make a formal FRCP 26(a)(2) expert disclosure, but instead merely identified Woodford as a potential expert witness in their Rule 26(a)(1) Initial Disclosures. [1] This disclosure, however, did not include a formal report, CV, or list of cases; it only included a single, unsigned and undated Affidavit from Woodford. [2]

Woodford's resume, which counsel for Defendants first received during his deposition, includes education in chemistry and a brief stint working in a lab with Scotland Yard in the 1970's, but otherwise wholly omits any reference to his work history. [3] The

---

[1] (*See* Pl. Initial Disclosures attached as Exh. A.)
[2] (*See id.*)
[3] (Ex. 4 to Woodford Depo.)

reason for this is apparent. Rather than pursue a career in academia or take a job with a company or agency, Woodford has earned the majority of his annual income over the last 4 decades through expert testimony and consulting in criminal and civil cases relating to illegal drugs.[4]

As to cocaine specifically, Woodford's resume may be sufficient to provide him with the knowledge and experience sufficient to earn the title of expert witness.[5] He has authored articles on the subject of cocaine odor and holds a patent for a formula which replicates the odor of cocaine.[6] As to marijuana odor however, Woodford lacks those qualifications.[7] (noting that he holds no patents relating to marijuana odor). He has not authored any articles relating to marijuana odor.[8] He has not taught any courses on the subject.[9] He has not completed any special training relating to marijuana odor.[10] And, most significantly, he has not completed any published, peer reviewed studies on the subject.[11]

Woodford's only experiences with marijuana odor are "experiments" in which he helped individuals and courts determine if marijuana odor, in certain circumstances, could be detected.[12] Woodford has not maintained any data relating to the details of each experiment, never published any findings from them, and cannot say if any of the results from those experiments can be generalized to apply in other scenarios, including this one.[13]

---

[4] (Woodford Depo., p. 85.)
[5] (Ex. 4 to Woodford Depo.)
[6] *Id.*
[7] (*See id.; see also* Woodford Depo., p. 96.)
[8] (Woodford Depo., p. 99.)
[9] (*Id.* at 98.)
[10] (*Id.* at 130, 136.)
[11] (*Id.* at 104.)
[12] (Woodford Depo., pp. 101 – 104.)
[13] (*Id.* at 102, 104.)

In the underlying criminal case, Woodford testified that it was scientifically impossible for Defendants to smell the odor or marijuana as they drove past the Plaintiffs' residence on Rockhouse Road in April, 2014. In their Rule 26(a)(1) Initial Disclosures, which Plaintiffs never supplemented, Plaintiffs identified Woodford as a testifying expert witness and provided an unsigned, undated Affidavit prepared for the criminal case.[14] Woodford acknowledged that the Affidavit was his, although he attempted to present a signed and dated version with additional paragraphs during his deposition.[15]

The Affidavit Plaintiffs provided to Defendants includes Woodford's assertion that marijuana odor cannot be smelled by a human being beyond 40 or 60 feet.[16] Notably, however, the Affidavit is completely silent on the scientific methodology that Woodford used to arrive at this conclusion.[17] The reason is obvious. Woodford did not perform any scientific analysis to generate his opinions.[18] With respect to procedures employed to derive the conclusions in his report, Woodford simply spoke with Plaintiffs and their attorney, took measurements of the area around Plaintiffs' residence, and did "research."[19] Woodford did not consider (or even attempt to find) scholarly articles or sources on marijuana odor.[20] Instead, he did internet research (i.e. a Google search) to find examples supporting his theory that marijuana odor can only travel 50 feet or less. [21] Woodford

---

[14] (Exh. A; Ex. 3 to Woodford Depo.)
[15] (Exh. 6 & 7 to Woodford Depo.)
[16] (Exh. 3 to Woodford Depo. at ¶¶ 11, 14 – 15.)
[17] (*See id.*)
[18] (Woodford Depo., pp. 26 – 28.)
[19] (*Id.* at 26 – 28, 35, 40-41.)
[20] (*Id.* at 42.)
[21] (*Id.* at 43 – 44.)

himself described the research that he did as "case prep" and was "not research in the scientific sense."[22]

Otherwise, in terms of research, Woodford relied on a few old books from his own personal library and his testimony in prior cases.[23] Woodford, of course, has no clue whether these sources, one of which was a police officer training book from the 1970's, are relied on as authoritative amongst chemists in general. [24] Likewise, his prior testimony has not been peer reviewed by any other scientists.[25] In short, Woodford has not done any testing on his own and did not rely on the testing of other scientists in the field of chemistry to support his conclusions in this case. Nevertheless, in his Affidavit, Woodford suggests that Defendants' testimony and statements that they smelled marijuana odor emanating from Plaintiffs' property on April 24, 2015 were not "credible" because it is impossible for marijuana odor to be detected by the human nose at such a distance. [26]

Because Woodford is not qualified to serve as an expert witness under FRE 702 and because his opinions are not supported by any scientifically valid methodology, Defendants move to strike his Report and to exclude him from testifying at trial.

## II. WOODFORD IS NOT QUALIFIED TO TESTIFY AS AN EXPERT RELATING TO MARIJUANA ODOR

Rule 702 of the Federal Rules of Evidence allows for expert opinion testimony only if a witness "is qualified as an expert by knowledge, skill, experience, training or education." This standard is not met merely where a proffered expert is said to have some knowledge or some experience in a given area. Rather, the proffered expert must have some

---

[22] (*Id.* at 43.)
[23] (Woodford Depo., pp. 45 – 46.)
[24] (*Id.* at 64.)
[25] (*Id.* at 104.)
[26] (Ex. 3 to Woodford Depo. at ¶ 17.)

knowledge and experience which specifically relates to the issues upon which he or she is asked to testify. *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir. Ohio 1997) (testimony of scientist excluded who opined on defect of product and causation of injuries where he conducted only cursory inspection of the product at issue).

For instance, in *Berry vs. City of Detroit*, the Sixth Circuit reversed a jury verdict on a § 1983 claim for excessive force which was premised, in part, on the improperly admitted testimony of the plaintiff's "police practices expert." 25 F.3d 1342, 1352 (6th Cir. 1993). The expert in *Berry* had a rather impressive academic background, boasting advanced degrees in sociology and education. In addition, the "expert" had taken courses in criminal justice and had worked as a deputy sheriff for approximately 6 years and serving as the elected sheriff for 4 years. The expert's resume also included work with his state's Justice Department developing training materials for sheriff's departments and years operating a consulting agency, where he testified in various court cases and conducted seminars in police management techniques. *Id.* at 1348 – 49.

While the expert's resume in *Berry* was very impressive, the Court easily concluded that he was not qualified to offer opinions as a police practices expert or to offer opinions critical of the police department's supervision of its employees. *Id.* at 1352. In large part, the Court premised its decision on the fact that the expert had little practical experience upon which to premise his criticisms of the police department. *Id.* at 1350.  As a result, the Court doubted the reliability of the expert's methodology and dubbed it "junk science," which was not useful to the jury. *Id.* at 1353.

This same rationale has been applied to experts in the hard sciences as well. In *Powell v. Tosh,* 942 F.Supp.2d 678 (W.D. Ky. 2013), the Western District of Kentucky

followed *Berry* in rejecting the qualifications of an expert asked to opine about odor control measures at a swine facility. Although the expert had general expertise relating to odor control, all of it grew out of his work with municipal wastewater treatment facilities; he had no experience at all with farms or swine facilities. *Id.* As a result, the Court found that the expert, although potentially qualified in other areas, was not qualified under FRE 702 to offer opinions relating to the swine facility at issue in *Powell. Id.*

Like the expert in *Powell*, while Woodford qualified as an expert in the general field of chemistry or with respect to cocaine and cocaine odor, as to marijuana odor, he is not qualified. Woodford has not published any articles, taught or taken any courses, does not hold any patents, and has not conducted any peer reviewed studies.[27] Woodford's sole experiences with marijuana odor appear to originate from 10 or so "experiments" that he conducted or consulted on, allegedly at the behest of some courts, where individuals attempted to smell marijuana.[28] It is telling, of course, that Woodford did not keep or publish information relating to these experiments and they were *never* peer reviewed.[29] Consequently, the utility of these experiments to demonstrate Woodford's qualifications to serve as an expert on the smell of marijuana from certain distances is nil.

Thus, even if Woodford's resume is sufficient to qualify him as an expert in chemistry or with respect to cocaine odor specifically, it is wholly insufficient to demonstrate that he has any practical expertise in the area of marijuana odor. As the Sixth Circuit noted in *Berry*, "A divorce lawyer is no more qualified to opine on patent law questions than anyone else, and it is a mistake for a trial judge to declare anyone to be

---

[27] (Woodford Depo. pp. 95-104, 130.)
[28] (*Id.* at 101-104.)
[29] *Id.*

generically an expert." *See* 25 F.3d at 1352. The same analogy holds true here. Woodford is

a chemist, but without more, he is not qualified to offer scientific, expert opinions about

marijuana odor.

### III.   WOODFORD'S PURELY SUBJECTIVE OPINIONS MUST BE STRICKEN UNDER *DAUBERT* AND *KUMHO* TIRE AS UNRELIABLE

With regard to the testimony of expert witnesses, Federal Rule of Evidence 702

provides that so long as an expert's testimony will

> [A]ssist the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill, experience,
> training or education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably to the facts of the
> case.

Under this rule, trial courts are designated as "gatekeepers" to determine whether a

purported expert's testimony is sufficiently relevant and reliable to be submitted to a jury.

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 147-148 (1999). To make this determination, a trial court must consider

whether the expert is proposing to testify to (1) scientific, technical or other specialized

knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.

*Daubert*, 509 U.S. at 592. This entails a preliminary assessment of whether the reasoning or

methodology underlying the testimony is scientifically valid and whether that reasoning or

methodology properly can be applied to the facts in issue. *Id.*

In the Sixth Circuit, it is incumbent on the party seeking to have an expert's

testimony admitted to show "'that the expert's findings are based on sound science, and

this will require some objective, independent validation of the expert's methodology; the

expert's bald assurance of validity is not enough.'" *Smelser*, 105 F.3d at 303 (quoting

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, (on Remand), 43 F.3d 1311, 1316 (9th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995)).

Plaintiffs cannot satisfy this burden because Woodford's Affidavit and deposition plainly indicate that he did not follow any scientific methodology to support his supposedly scientific claims.[30] Though he is trained and educated as a chemist, Woodford did not perform any studies to derive his opinions here.[31] He did not review any scholarly articles to determine if any studies relating to the distance that marijuana odor can travel have been conducted.[32] The reason for this is that no studies on the subject exist.[33] Thus, Woodford's opinion that marijuana odor can only travel 40 (or 60 feet depending on when you ask him) is not based on any scientific principles, but instead on his own purely personal opinions derived from a limited handful of experiences.

While Woodford attempted to defend his opinions as legitimately scientific, his efforts only underscored the unscientific nature of his conclusions. Woodford invested "hours" of time to prepare his Affidavit, including a 3-day trip up to Kentucky to get a firsthand look at the Plaintiffs' residence where the marijuana was found by Defendants.[34] But, when asked what specifically he did in Kentucky, Woodford advised that he took some measurements of the property and did no other analysis.[35] He could not actually test the smell of marijuana on the property at that time because Plaintiffs' marijuana plants had already been seized. [36]

---

[30] (Exh. 3 to Woodford Depo.)
[31] (Woodford Depo., pp. 35, 40 – 41.)
[32] (*Id.* at 44 – 45.)
[33] (*Id.* at 150 – 151.)
[34] (Woodford Depo., pp. 35 – 41.)
[35] *Id.*
[36] *Id.*

Woodford did not so much as visit a library to review scholarly works relating to odor or marijuana odor specifically.[37] Instead, he consulted a few aged books from his personal library. One book was a police practices textbook, written by a police officer from the 1970's.[38] Woodford had no idea if any other chemists in the field relied on this police textbook as an authority in relation to the science of marijuana odor.[39]

In addition, the only research that Woodford did was internet research (i.e. Google searches) to find examples of instances relating to marijuana odor which supported his conclusions.[40] As his Affidavit shows, these instances come from news reports based on cases in other jurisdictions and *not* from any scientifically verified source.[41] In rather circular and transparent fashion, some of these instances include Woodford's own testimony in other cases.[42] Because, Woodford's testimony has never been subjected to peer review, there is no way to determine if his assertions are scientifically valid or not.[43] Thus, in his Affidavit, Woodford relies solely on his prior claims about marijuana odor to show that his claims about marijuana odor in this case are true. In other words, Woodford did not rely on any tested, proven, or peer reviewed principles of science to inform his opinions and conclusions, but instead only relied on the wisdom of the internet and his own past testimony.

The only true study that Woodford cites is not one in the field of chemistry at all. Instead, it is a criminal justice study from the University of Alaska.[44] The study did not

---

[37] (Woodford Depo., pp. 42 – 43.)
[38] (*Id.* at 45.)
[39] (*Id.* at 64.)
[40] (Woodford Depo. pp. 42 – 43.)
[41] (Ex. 3 to Woodford Depo.)
[42] (*Id.* at ¶¶ 10, 11, 14; *see also* Woodford Depo., pp. 112 – 116.)
[43] (*Id.* at 116.)
[44] (Exh. 3 to Woodford Depo. at ¶¶ 12 – 13; Woodford Depo., p. 117, 121.)

support his central claim that marijuana odor cannot travel more than 40 feet since the study contains no outer limit for the distance that marijuana odor could possibly be smelled.[45] The study merely compiled data from police reports in Alaska where officers reported smelling marijuana from specified distances.[46] The study then identified the average distance that officers had reported smelling the odor of marijuana.[47] Under these circumstances, the suggested study that Woodford relies on in his Affidavit is not from the field of chemistry and does not verify the opinions he makes in his Affidavit.

The kicker, of course, is that there is no scientific way to truly test and be sure that marijuana odor could only travel limited distances. Woodford himself agreed with the assessment of Defendants' expert, Dr. Kenneth Furton, that no published studies exist which identified the limits that marijuana odor could travel.[48] In fact, Woodford explained that he did not "think anyone is capable of doing such a thing" and agreed that, due to the number of variables affecting smell, that one couldn't "do studies of it because – the variable – it's just too much. You can't get it together."[49] In other words, the so-called scientific claims in Woodford's Affidavit that marijuana cannot possibly be smelled at a distance of 150 feet is something that scientists have not studied – and would not be able to – study.[50]

"*Daubert* teaches that expert opinion testimony qualifies as scientific knowledge under Rule 702 only if it is derived by the scientific method and is capable of validation." *Smelser*, 105 F.3d at 304. In *Smelser,* the Sixth Circuit affirmed the exclusion of expert

---

[45] (*Id.* at 118.)

[46] *Id.*

[47] *Id.*

[48] (Woodford Depo., p. 151; See also Furton Report attached as Ex. B.)

[49] (*Id.* at 148.)

[50] (*Id.* at 149.)

testimony relating to an allegedly defective seat belt where, like here, the putative expert failed to show that his tests "were based on scientifically valid principles, were repeatable, had been the subject of peer review or publication or were generally accepted methods for testing seat belts in the field of biomechanics." *Id.* at 304 – 305.

Here, Woodford does not even claim that he ran tests. Much like the expert in *Smelser,* Woodford's opinions and conclusions are neither derived by science nor capable of validation. He did no studies to develop his opinions and he never published his opinions anywhere so that they could be validated through the process of peer review.[51] In addition, Woodford's opinions are also influenced and informed by sources, including those from the internet, that are not necessarily deemed authoritative in the broader scientific community.[52]

If this is not enough to cast doubt on the validity of Woodford's opinions, analysis of one final factor should. In *Smelser*, the Sixth Circuit cautioned courts considering the validity of a putative expert's methodology to also consider

> [W]hether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying because the former provides important, objective proof that the research comports with the dictates of good science.

105 F.3d at 303 (quoting *Daubert*, 43 F.3d at 1317).

Woodford conducted no studies and no research, but his opinions and conclusions were derived solely for the purposes of litigation. In fact, the majority of Woodford's work in the last 40 years has been devoted to work as an expert witness and consultant.[53]

---

[51] (Woodford Depo. pp. 104, 116.)
[52] (Woodford Depo., pp. 42 – 45.)
[53] (Woodford Depo., p. 85.)

Indeed, Woodford does a very specific type of expert work: he only works for people like the Plaintiffs here, who were either charged with a crime relating to illegal drugs or were filing a lawsuit relating to illegal drugs.[54] Thus, Woodford's opinions and analysis are clearly not the product of any objective scientific principles, but were developed "expressly for the purpose of testifying" in case after case.

In summary, there is no evidence that Woodford's conclusions are scientifically reliable. Under *Daubert* and *Kumho Tire,* this is unacceptable. Consequently, Woodford's Affidavit and testimony are inadmissible under FRE 702 and should be stricken.

## IV.   WOODFORD'S CONCLUSION THAT SHERIFF KIRK'S TESTIMONY IS "NOT CREDIBLE" IS NOT ADMISSIBLE BECAUSE IT IS INVADES THE PROVINCE OF THE JURY AND IS PREMISED ON CREDIBILITY DETERMINATION

Assuming *arguendo* that Woodford's testimony is otherwise admissible, at least one of his opinions should be excluded as an impermissible credibility determination. Under Rule 702, the jury's role as fact-finder should not be supplanted by expert testimony, but rather only assisted by it. The key inquiry in determining the admissibility of proffered expert testimony is whether it will **assist** the finder of fact in understanding the evidence. See FRE 702; *see* also *Berry*, 25 F. 3d at 1350. But there is a distinct difference between assisting the jury and doing its job of fact finding for it.

Woodford crosses the line in his Affidavit when he claims that Sheriff Kirk's assertions that he smelled marijuana emanating from Plaintiffs' residence at a distance of 150 feet were "not credible."[55] With this opinion, Woodford is instructing the Jury about which witnesses they should believe and he is doing it without any true personal

---

[54] (*Id.* at 105 – 108.)
[55] (Exh. 3 to Woodford Depo. at ¶ 17.)

14

knowledge of the facts of the case. Woodford is not using his experience and training to tell the jury what the facts *mean*, he is telling the jury what the facts *are*.

At a minimum, Woodford should be prohibited from offering opinion testimony commenting on the credibility of the testimony of Sheriff Kirk and other witnesses.

## V.    WOODFORD'S PREVIOUSLY UNDISCLOSED OPINIONS OFFERED FOR THE FIRST TIME IN HIS DISCOVERY DEPOSITION SHOULD BE EXCLUDED

Even if Woodford is permitted to testify as to some of the conclusions in his unsigned Affidavit, others must be excluded because they were not properly disclosed to Defendants as required under FRCP 26. Under Rule 26(a)(2)(D), expert disclosures must be made within the deadlines imposed by the court. Here, the Court ordered Plaintiffs' expert disclosures to made by February 28, 2017 and with supplementation due by March 31, 2017.

Plaintiffs never made formal expert witness disclosures. Instead, they identified Woodford as a potential expert in their Rule 26(a)(1) Initial Disclosures.[56] Importantly, the only document Plaintiffs provided was Woodford's unsigned Affidavit that was marked as Exhibit 3 to his deposition. Plaintiffs did not produce a case list or CV.

As a result, Defendants' counsel could not anticipate that Woodford would proffer additional opinions, reports, and documents during his deposition that had never been disclosed previously. Specifically, during his deposition, Woodford proffered a signed Affidavit with additional opinions and conclusions over and above what was included in the unsigned Affidavit identified as Exhibit 3 to his deposition.[57] Additionally, Woodford provided a "summary" of additional opinions that he provided to Plaintiffs' counsel over

---

[56] (*See* Exh. A.)
[57] (Exh. 7 to Woodford Depo.; *see also* Woodford Depo., pp. 31, 42.)

the phone in anticipation of his deposition.[58] Finally, Woodford provided a chart he had created and opinions critical of Defendants' own expert, Dr. Kenneth Furton.[59] None of these documents or opinions had been provided to Defendants previously.[60] This is true even though Defendants made their expert disclosure on April 28, 2017, more than 3 weeks before Woodford's deposition.[61]

In short, in his deposition, Woodford proffered opinions and conclusions not previously disclosed to Defendants within the time limits imposed by the Court. As a result, Defendants' were not prepared to address Woodford's newly stated opinions in his deposition. In light of this prejudice, Defendants request that Woodford be precluded from testifying as to the new opinions first disclosed in his deposition, and from testifying about his statistical criticisms of Dr. Kenneth Furton's report.

## VI.   CONCLUSION

In light of the foregoing, Defendants respectfully request that the Court strike the report and testimony of Mr. Woodford and prohibit him from testifying as an expert witness at trial.

---

[58] (Exh. 6 to Woodford Depo.; *see also* Woodford Depo. pp. 14 – 15.)
[59] (Ex. 10 to Woodford Depo.)
[60] (See Exh. A.)
[61] (R. 31, Notice of Service of Def. Expert Disclosure.)

Respectfully submitted,


*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq. (#43548)
Claire E. Parsons, Esq. (#92934)
ADAMS, STEPNER,
WOLTERMANN & DUSING, PLLC
40 West Pike Street
Covington, KY  41011
859.394.6200
859.392.7263 – Fax
jmando@aswdlaw.com
cparsons@aswdlaw.com

*Attorneys for Defendants, John Kirk, individually and in his capacity as Martin County Sheriff; Paul D. Witten, individually and in his capacity as Martin County Deputy Sheriff; the Martin County Sheriff's Office; and, Martin County, Kentucky*


## CERTIFICATE OF SERVICE

This is to certify that on the **7th** day of July, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:  Michael J. Curtis, Esq.


*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq.

1650952.1
21H042-76014

17