UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| PAMELA BLEVINS and<br>MARDY MOLLETT, JR.,<br><br>    Plaintiffs,<br><br>V.<br><br>JOHN KIRK, individually and in his capacity as Martin County Sheriff, PAUL D. WITTEN, individually and in his capacity as Deputy, Agent, Servant of the Martin County Sheriff's Office, MARTIN COUNTY SHERIFF'S OFFICE, and MARTIN COUNTY, KENTUCKY,<br><br>    Defendants. | NO. 7:16-56-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' motion to strike the expert testimony of Plaintiffs' expert (DE 46) and Defendants' motion for summary judgment (DE 47). Plaintiffs assert claims under 42 U.S.C. § 1983 and state claims for violation of Kentucky's civil rights statute, Ky. Rev. Stat. § 344.020, and for the tort of outrage. For the reasons discussed below, the Court grants the Defendants' motion to strike as to their expert's opinion on marijuana odor and distance and grants Defendants' motion for summary judgment as to all claims.

**I. Background**

On the evening of April 24, 2015, Martin County Sheriff John Kirk and his deputy Chris Todd were traveling down Rockhouse Road when, they claim, they smelled marijuana odor. At the time, they were approximately 160 feet from Mardy Mollett's residence. Deputy Todd was familiar with Mollett's residence based on a previously executed search in 2005 during

1

which a marijuana grow operation was discovered. He called Paul Witten, the Chief Deputy of the Martin County Sheriff's Office, and asked him to prepare an affidavit for a warrant to search Mollett's property based on his statement that he smelled marijuana.

Deputy Witten drafted the search warrant and it was signed by a Martin County District Judge. The warrant was executed that evening by Sherriff Kirk and several deputies, including Todd and Witten. Initially, only Mollett's ex-wife, Pamela Blevins, who was temporarily residing on the property, was present, but she called Mollett and he arrived during the search. The deputies discovered 147 marijuana plants growing in Mollet's residence. Mollett and Blevins were indicted on August 6, 2015 in Martin County District Court. Mollett and Blevins moved to suppress evidence obtained during the search and, largely based on the expert testimony of Dr. Warren James Woodford that marijuana odor could not be detected at 150 feet, the court granted the motion. The charges were ultimately dismissed.

Plaintiffs have filed this action seeking damages under 42 U.S.C. § 1983 against Sheriff Kirk, Deputy Witten, Martin County, and the Martin County's Sheriff Office. They claim that Sheriff Kirk's claim that he smelled marijuana at Mollett's residence, upon which the search warrant was based, was false and intentionally misleading. They also allege violations of Kentucky's civil rights law, Ky Rev. Stat. § 344, that Defendants committed the tort of outrage, and that that Martin County and the Martin County Sheriff's Office are liable for negligent training, supervision, or monitoring of Sheriff Kirk and Deputy Witten.

## II. Discussion

### A. *Motion to strike Plaintiffs' marijuana odor expert*

Plaintiffs have retained Dr. Warren James Woodford as an expert regarding marijuana odor. Dr. Woodford has a Ph.D in Chemistry from Emory University. Plaintiff disclosed Dr. Woodford in their Rule 26(a)(1) initial disclosure, providing an unsigned affidavit as to his

opinions. (DE 46-1), In that affidavit, Woodford states that he is a forensic chemist specializing in detection of marijuana odors. He claims that he is intimately familiar with the science of drug odors and was granted a patent for inventing a way to reproduce the odor of cocaine for police and K-9 training. He intends to testify that it was impossible for Sherriff Kirk to have smelled marijuana as claimed in the affidavit because a human cannot detect the smell of marijuana over a distance of forty feet.[1] At Dr. Woodford's deposition on May 19, 2017, Plaintiffs provided a signed affidavit from Dr. Woodford containing additional opinions. That affidavit indicated that Dr. Woodford also intends to testify that Deputy Todd's belief that he smelled marijuana was attributable to the power of odor suggestion; that if the car windows were cracked or rolled down, air would flow out, not in; and that Sheriff Kirk and Deputy Todd lacked experience and training in recognition of marijuana odor. (DE 48, 76-78).

1. *Dr. Woodford's opinion on distance and marijuana odor*

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] There is some confusion on the record as to whether Dr. Woodford believes that the maximum distance marijuana can be smelled is forty or sixty feet. The following analysis is the same as to both opinions.

Fed. R. Evid. 702. District Courts assume a gatekeeping rule to exclude irrelevant or unreliable expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 and the courts gatekeeping function applies to both scientific and non-scientific expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under *Daubert*, the reliability requirement "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (internal quotation marks omitted) (quoting *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 907 (6th Cir. 2004)).

In assessing whether expert testimony is reliable, the Court's focus is "on the soundness of the expert's methodology and not the correctness of his conclusions." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997), *abrogated on other grounds*, *G.E. v. Joiner,* 522 U.S. 136 (1997). The Supreme Court in *Daubert* provided a non-exclusive list of factors to assist trial courts in assessing the reliability of an expert's methodology:

> (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation, and (4) whether the theory or technique has been generally accepted in the particular scientific field.

*Id.* (quoting *Glaser v. Thompson Medical Co., Inc.,* 32 F.3d 969, 972 (6th Cir. 1994)). The Ninth Circuit has also identified additional factors which have been applied in this Circuit: "'whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying' because the former 'provides important, objective proof that the research comports with the dictates of good science.'" *Id.* quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Dr. Woodford's opinion that marijuana odor cannot be detected beyond forty feet is based primarily on a study published by the University of Alaska in 2011. The study found that the average distance that officers reported smelling indoor growing/green marijuana odor was 41.5 feet. A supplemental report published in 2012 found the average distance to be 55.8 feet. The average distance in the 2011 study was based on eleven cases in which officers had noted precise distances. (DE 48, at 75) The 2012 supplement incorporated four additional cases. Brad A. Myrstol & Jason Brandeis, *The Predictive Validity of Marijuana Odor Detection: An Examination of Alaska State Trooper Case Reports 2006–2010* 35 (2012), https://scholarworks.alaska.edu/bitstream/handle/11122/3727/1110.02.marijuana.pdf?sequence=1. The original study reported a standard deviation of 56.8 feet and the supplemental study reported a standard deviation of 66.7 feet. (DE 48, at 75); Myrstol Brandeis, *supra*, at 35.

Dr. Woodford also relied on news reports in support of his theory. The first report cited by Dr. Woodford discusses his testimony at a hearing in Port, Townsend Washington were he testified that marijuana odor loses its characteristic smell at distances of sixty feet. The second news article discusses a marijuana bust were officers reported smelling marijuana at a distance of thirty feet outside a mobile home. (DE 48, at 75). Dr. Woodford also relies on statements made by Charles McCormick, a police officer who testified in a previous case that he "never smelled the odor of marijuana from an indoor grow from a distance of 40 feet or more outside the residence." (DE 38, at 74).

None of the *Daubert* factors support the reliability of Dr. Woodford's methodology. Dr. Woodford's opinion cannot be tested and has not been subject to peer review. At his deposition, Dr. Woodford admitted that the University of Alaska study simply recorded police reports and were not scientific studies. Instead, he claims that he did scientific analysis based on the numbers contained in the study. (DE 48, at 121). That analysis consisted of removing

"outliers" because the standard deviation was greater than the average and Dr. Woodford's assumption that some of the police officers lied. When asked if this analysis was peer reviewed, Dr. Woodford stated that "peer review crap" was not necessary and that he was instead "talking about common sense." (*Id.* at 125). Similarly, the news reports and testimony of Officer McCormick are not scientific studies and have not been subject to peer review. Not only has Dr. Woodford's theory not been subject to peer review; it cannot, by his own admission, be properly tested. At his deposition, Dr. Woodford admitted that, because of the number of variable which affect smell, there are no studies that can definitely discuss the distance marijuana odor can travel or demonstrate that it cannot be detected at distances of 150 feet. (*Id.* at 150-51). Dr. Woodford's use of the University of Alaska study or news reports would also not be generally accepted by experts in the field of drug odor detection. The study explicitly states that "the prevalence estimates identified in this study pertain only to the *marijuana grow searches conducted by AST investigators during the five-year period spanning 2006–2010.* Inferences to another sampling universe, other jurisdictions, or different time periods cannot be made from these data." Myrstol & Brandeis, *supra*, 52. Similarly, Dr. Woodford has not established that the news reports he cites can be extrapolated to this case or that such anecdotes are commonly relied on by experts in the field. Dr. Woodford even cites to a news article describing his own testimony that marijuana odor cannot be smelled beyond sixty feet as evidence that his theory is correct. It is unreasonable to believe that odor experts would accept that prior statements by an expert are scientific evidence that those opinions are correct. Finally, to the extent that Dr. Woodford has conducted additional research, his experiments appear to be done solely in preparation of litigation. At his deposition, Dr. Woodford described his own tests as consisting of "loading up grow houses with marijuana odor, taking people out, having them walk around." (DE 48, at 131). But Dr. Woodford did not keep data on these experiments, they were typically only

6

done the day before a trial, (*Id.* at 131-32), and he stated that he never had any intention to publish the work, (*Id.* at 136).

In their response, Plaintiffs do not argue that Dr. Woodford satisfies the *Daubert* factors discussed above. Instead, they emphasis the flexibility of the factors and the need to tailor them to the facts of a particular case. They cite to the Sixth Circuit's decision in *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001) for the proposition that Dr. Woodford's lack of peer review does not render his opinion unreliable. That case is distinguishable, as the expert's opinion was derived from the his "own practical experiences throughout forty years in the banking industry" which "do[es] not easily lend [itself] to scholarly review or to traditional scientific evaluation. *Id.* at 335. Dr. Woodford's proposed testimony, however, is not based on his personal knowledge or experience. It is based on scientific studies to which the *Daubert* factors can be readily applied. Those factors make it clear that Dr. Woodford's proposed testimony lacks a valid and reliable methodology. *See Smelser*, 105 F.3d at 304-305 (excluding a seat belt expert who failed to establish his tests were " based on scientifically valid principles, were repeatable, had been the subject of peer review or publication or were generally accepted methods for testing seat belts in the field of biomechanics.").[2]

2. *Dr. Woodford's additional opinions*

Defendants seek to exclude Dr. Woodford's remaining opinions on grounds that they were not properly disclosed under Fed. R. Civ. Pro. 26(a)(2), which requires parties to disclose the identity of an expert witness and to provide a written report, prepared and signed by the witness, that contains the opinions the witness will testify to and the reasons for them. Fed.

---

[2] Because the Court finds that Dr. Woodford's opinion as to marijuana odor and distance is unreliable, the Court does not express any opinion as to Defendant's arguments that Dr. Woodford is unqualified, his opinions are conclusions of law, his opinions are unnecessary and invade the role of the jury, or his testimony includes matters not relevant to this litigation.

R. Civ. P. 26(a)(2)(A)-(B). Although Plaintiff's expert disclosures were not in complete compliance with the procedural rule, Dr. Woodford's affidavit containing additional opinions was disclosed prior to the supplementation deadline in the Court's Revised Scheduling Order. (DE22). Accordingly, the Court will consider Dr. Woodford's additional opinions in assessing Defendants' motion for summary judgment

B. *Motion for Summary Judgment*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the court must construe all evidence, facts, and inferences in favor of the non-moving party. *United States v. Diebold*, 369 U.S. 654, 655 (1962). In order to defeat a summary judgment motion, "[t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (internal quotations omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

1. *§ 1983 claims against Sheriff Kirk and Deputy Witten*

Qualified immunity protects governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability; it is a defense against suit. Once raised, the plaintiff bears

8

the burden of showing that the defendant is not entitled to qualified immunity. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). Law enforcement officers receive qualified immunity from § 1983 liability if "(1) they did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not clearly established at the time of the alleged misconduct." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 385 (6th Cir. 2017). Qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Gavitt*, 835 F.3d at 640 (internal quotation marks omitted) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Whether an officer violates an individual's Fourth Amendment rights depends on if their actions were objectively reasonable. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). In search and seizure cases, when officers rely on a judicially secured warrant, they are generally entitled to qualified immunity. *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005). This is because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonably manner . . . ." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). A plaintiff may overcome this presumption, however, by showing that "the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989) (citing *Malley*, 475 U.S. 335). Thus, officers cannot rely on a warrants if "that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id.*

Plaintiffs have failed to present any evidence that Sheriff Kirk knowingly provided false information to Deputy Witten or that Deputy Witten[3] intentionally deceived the state court judge. The affidavit stated that

> Sheriff Kirk was on patrol in Rockhouse area of Martin County and noticed a strong odor of marijuana coming from Marty Mollett's residence. Also this person has been charged in the past with cultivation of marijuana, indoor grow. Also received multiple anonymous calls about illegal activity at this residence . . . Sheriff Kirk while operating his patrol vehicle rolled windows down and slowed down and made 2 different passes to determine where the odor was coming from and observed an adult female in the yard.

(DE 47-1, at 2). The Court has excluded from evidence Dr. Woodford's opinion regarding the distance beyond which the smell of marijuana can be detected. Moreover, there is no evidence that information contained in the search warrant affidavit was false. The only evidence on the record is as follows: Sheriff Kirk averred that from a moving vehicle with the window partially cracked, he smelled marijuana at a distance of 160 feet; Deputy Todd believed he smelled marijuana, but attributed the belief to the power of odor suggestion, (DE 48, at 76-77); Blevins was able to smell marijuana on the property, (DE 54, at 59); and Mollett's trailer did in fact contain a large quantity of marijuana. Nothing in the evidence suggests that Sheriff Kirk or Deputy Witten intentionally mislead the judge when applying for the search warrant. The affidavit in support of the search warrant states only that Sheriff Kirk noticed an odor emanating from the residence. Moreover, nothing in Dr. Woodford's opinion suggests that the officers lied. At most, it suggests the officers may have been mistaken.

To the extent that Plaintiffs argue that the officers are not entitled to qualified immunity because they should have known they lacked probable cause because marijuana odor cannot be detected at 150 feet, that argument also fails. An officer's conduct violates clearly

---

[3] Confusingly, in Plaintiffs' response brief, they discuss liability as to Sheriff Kirk and Deputy Todd for both their federal and state law claims. Deputy Todd was not named as a defendant. The only individual defendants in this case are Sheriff Kirk and Deputy Witten.

established law only when, at the time, "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Plaintiffs do not cite any case with even remotely similar factual circumstances, let alone a case which establishes that detection of marijuana odor at a certain distance does not constitute probable cause. Nor is there any evidence on the record which suggests that the probable cause determination in this case was objectively unreasonable. Accordingly, Sheriff Kirk and Deputy Witten are entitled to qualified immunity and summary judgment on Plaintiffs' § 1983 claim.

  2. *Claims against Martin County Sheriff's Department*

Plaintiffs assert their § 1983 and state law claims against Martin County Sherriff's Department. Those claims fail for the simple reason that, under Kentucky law, a police department is not an entity that can be sued. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). As the Plaintiffs concede in their response, Martin County is the proper party for these claims and the County's liability is addressed below. (DE 40, at 1).

  3. *§ 1983 claims against Martin County*

Plaintiffs also bring § 1983 claims against Martin County and Sheriff Kirk and Deputy Witten in their official capacities,[4] asserting two theories of liability. First, that Martin County is vicariously liable for constitutional violations committed by Sheriff Kirk and Deputy Witten. Second, that Martin County failed to supervise, train, and monitor the officers or that the search was the result of customs and practices of the Sheriff's Department. Because no constitutional violation occurred these claims fail. *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 158 (6th Cir. 2013). Moreover, even if the Court were to have found the officers committed a constitutional violation, summary judgment would still be warranted on

---

[4] A claim against a local government official in his official capacity is equivalent to a claim against a local government. Therefore, these claims are appropriately addressed together.

Plaintiffs' failure to train claim for two reasons. First, Plaintiffs have stated in their briefing on the motion to strike that they are abandoning that claim. (DE 58, at 4). Second, Plaintiffs have not introduced sufficient evidence that the alleged constitutional violation was the result of deliberate indifference in failing to train officers as to when detection of marijuana odor constituted probable cause. *City of Canton v. Harris*, 489 U.S. 378, 392 (1989) (holding that failure to train claims are cognizable only where the local government's "failure to train reflects deliberate indifference to the constitutional rights of its inhabitants"). The only evidence on the record relevant to this claim is Dr. Woodford's opinion that "Sheriff Kirk and Deputy Todd lack training to give them credit as reliable smellers of the odor of marijuana." (DE 48, at 77). To prevail on a deliberate-indifference claim, however, Plaintiffs "must show that the allegedly violated right was clearly established." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 995 (6th Cir. 2017). For the reasons stated above, Plaintiffs cannot do so. There is no clearly established law regarding marijuana odor and probable cause. Accordingly, Martin County is entitled to summary judgment on Plaintiffs' § 1983 claims.

    4. *State law claims against Sheriff Kirk and Deputy Witten*

Plaintiffs assert claim under Kentucky's civil rights law, which implements federal civil rights law and safeguards individuals "from discrimination because of familial status, race, color, religion, national origin, sex, age . . . or . . . disability . . . ." Ky. Rev. Stat. § 344.020(1). The claims against Sheriff Kirk and Deputy Witten fail because individuals are not liable under Ky. Rev. Stat. § 344. *Woodrum v. Lane Bryant The Ltd., Inc.*, 964 F. Supp. 243, 244 (W.D. Ky. 1997). Plaintiffs have conceded that this argument is correct. (DE 40, at 3).

Plaintiffs also assert a state law outrage claim against Sheriff Kirk and Deputy Witten. Under Kentucky law, the tort of outrage has the following elements:

    (1) the wrongdoer's conduct must be intentional or reckless;

(2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

(3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and

(4) the emotional distress must be severe.

*Hubbard v. Gross*, 199 Fed. App'x 433, 441-42 (6th Cir. 2006) (quoting *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. Ct. App. 2001)). Plaintiffs have failed to establish any of the required elements. There is no evidence on the record that the officers intended to cause emotional distress. The officers' conduct, seeking a warrant based on their belief that they smelled marijuana odor, is not outrageous or intolerable such that it offends generally accepted standards of decency and morality. And there is no evidence on the record that the Plaintiffs suffered severe emotional distress. In fact, Plaintiffs do not even address the outrage claim in their response brief. Accordingly, Plaintiffs outrage claims fail because Plaintiff has not presented any evidence of severe emotional distress or sufficiently outrageous conduct.

5. *State law claims against Martin County*

Plaintiffs also assert their state civil rights and tort of outrage claims against Martin County and Sheriff Kirk and Deputy Witten in their official capacity. The Eleventh Amendment of the United States Constitution generally prohibits citizens from suing the States in federal court. *Mixon v. Ohio*, 193 F.3d 389, 396-97 (6th Cir. 1999). Additionally, Kentucky law recognizes a rule of "pure sovereign immunity" for the state itself. *Comair, Inc. v. Lexington-Fayette Urban Cty. Airport Corp.*, 295 S.W.3d 91, 94 (Ky. 2009). In Kentucky, counties, "which predate the existence of the state and are considered direct political subdivisions of it," enjoy the same immunity as the Commonwealth. *Id.* at 94-95. While Kentucky has waived immunity in state courts for claims under Ky. Rev. Stat. § 344, *Dep't of Corrections v. Furr*, 23 S.W.3d 615, 618 (Ky. 2000), it has not waived immunity or consented

to suit in federal court for those claims. *See Wilson v. Kentucky*, No. 5:08-238-JMC, 2008 WL 4951774, at *2 (E.D. Ky. Nov. 14, 2008). Kentucky has also not waived immunity for tort of outrage claims. *See Franklin County v. Malone*, 957 S.W.2d 195, 203 (Ky. 1997) (overruled on other grounds by *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001)). Accordingly, Plaintiffs state civil rights claim and tort of outrage claim against Martin County are barred by sovereign immunity.

### III. Conclusion

For the reasons discussed above, the Court **HEREBY ORDERS** that:

(1) Defendant's motion to strike the report and testimony of Plaintiff's expert Warren James Woodford (DE 46) is **GRANTED** as to his opinion regarding marijuana odor and distance;

(2) Defendant's motion for summary judgment (DE 47) is **GRANTED**;

(3) all remaining motions are **DENIED** as moot;

(4) a judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated March 20, 2018.

*[signature]*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY